**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL NELSON,<br><br>        Plaintiff,<br><br>    v.<br><br>FOSTER POULTRY FARMS, et al,<br><br>        Defendants. | Case: 1:21-CV-222-JLT-BAM<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION; GRANTING MOTION FOR REMAND<br><br>(Doc. 36) |

### I.    INTRODUCTION

This matter is before the Court on Michael Nelson's motion for reconsideration of the Court's order denying Plaintiff's motion for remand. Pursuant 28 U.S.C. §1441(a), Foster Poultry Farms removed Plaintiff's disparate treatment, discrimination, and wrongful termination suit from state court to this Court on the grounds of federal question jurisdiction, arguing § 301 of the Labor Management Relations Act (Section 301), 28 U.S.C. § 185, preempts Plaintiff's claims. (Doc. 1.) Plaintiff then filed a motion that offered to voluntarily dismiss his federal causes of action and requested remand of the action to state court. (Doc. 8.) The Court referred the motion to the assigned magistrate judge, who determined the motion should be denied, and the Court adopt this rationale. (Doc. 22 at 2.; Docs. 8, 21, 22.)

1

The parties then stipulated to allow Plaintiff to amend his complaint pursuant Federal Rule of Civil Procedure 15(a). (Docs. 26, 27.) Plaintiff filed his first amended complaint on January 9, 2023. (Doc. 31 (FAC).) On March 8, 2023, Plaintiff filed a motion for reconsideration. (Doc. 36.) For reasons set forth below, the Court concludes that reconsideration is warranted and, upon reconsideration, grants the motion for remand.

## II. BACKGROUND

The dispute before the Court concerns the causes of action alleged in Plaintiff's First Amended Complaint (Doc. 31) and whether any of the alleged actions are preempted under Section 301. Plaintiff's First Amended Complaint asserted nine causes of action: (1) discrimination in violation of California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940, (2) harassment in violation of FEHA, (3) retaliation in violation of FEHA, (4) failure to provide reasonable accommodation in violation of FEHA, (5) failure to engage in interactive process in violation of FEHA, (6) negligent hiring, supervision, and retention, (7) violation of California Labor Code section 1102.5, (8) wrongful termination of employment in violation of public policy, and (9) intentional infliction of emotional distress. (Doc. 31.)

## III. STANDARD OF DECISION

**A.  Reconsideration**

Reconsideration of a prior order is an extraordinary remedy "to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law," and it "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation . . ." of that which was already considered by the Court in rendering its decision, *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (internal quotation marks and citation omitted). "There may also be other, highly unusual, circumstances warranting

2

reconsideration." *School Dist. No. 1J Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

Federal Rule of Civil Procedure 60(b) provides the bases for reconsideration of final orders of the district court. Rule 60(b) permits a district court to relieve a party from a final order or judgment on grounds of: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . . (3) fraud. . . of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied . . . or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). In addition, the Court's Local Rule 230(j)(1)-(4) requires that a movant show "what new or different facts or circumstances are claimed to exist which did not exist or were not shown" previously, "what other grounds exist for the motion," and "why the facts or circumstances were not shown" at the time the substance of the order which is objected to was considered.

**B.     Removal and Remand**

A defendant may remove a state court case to federal court if the case is within the federal court's original subject matter jurisdiction. 28 U.S.C. § 1441(a)*; see also Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("A federal court has jurisdiction over a civil case initiated in state court and removed by the defendant to federal district court if the case originally could have been brought in federal court."). A state court action is within the Court's original subject matter jurisdiction if either plaintiff and defendant are diverse in citizenship and the amount in controversy exceeds $75,000 (diversity jurisdiction); or the state court action presents a federal question (federal question jurisdiction). 28 U.S.C. §§ 1331, 1332. Absent diversity jurisdiction, federal question jurisdiction is required for removal to be proper.

A motion to remand is the proper procedure for challenging removal. A plaintiff may move to remand a case to the state court from which it was removed if the district court lacks jurisdiction or if there is a defect in the removal procedure. 28 U.S.C. § 1447(c). The Court may remand *sua sponte* or on motion of a party. The party who invoked the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *See Enrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)); *see also Yu v. ByteDance Inc.*, 2023 WL 5671932, at *3 (N.D. Cal. 2023).

3

## IV. DISCUSSION

### A. Fed. R. Civ. P. 60(b)(5)-(6) and Local Rule 230(j)

Plaintiff moves for reconsideration and requests remand pursuant to Fed. R. Civ. P. 60(b)(5)-(6), Local Rule 230(j), 28 U.S.C. § 1441 and 28 U.S.C. § 1447(c). Specifically, Plaintiff states Rule 60(b)(5)-(6) authorizes relief from a final judgment when "the judgment has been satisfied . . ." or "any other reason justifying relief from the operation of the judgment." Plaintiff asserts the following circumstances satisfy the Rule 60(b)(5)-(6) and Local Rule 230(j) requirements:

> The Court's Order denied Plaintiff's motion for remand because [the] 7th [cause of action] for breach of oral contract not to terminate employment without good cause and 8th cause of action for breach of implied in fact contract not to terminate employment without good cause, created federal question jurisdiction. The Court's Order also denied [Plaintiff's] request to dismiss Plaintiff's 7th and 8th causes of action, because Plaintiff erroneously cited to Fed. R. Civ. P. 41(a), instead of the proper Fed. R. Civ. P. 15(a)(2). Plaintiff needed to resolve the issues of amending his complaint prior to filing this motion. Since the Court's Order, the Parties stipulated to dismiss these claims on October 28, 2022, and federal question jurisdiction is no longer an obstacle to Plaintiff's motion for remand.

(Doc. 36 at 11.)

Defendant argues that Plaintiff's motion for reconsideration should be denied because "it contains the same argument that was fully briefed and rejected in the motion to remand." (Doc. 38 at 10.) Defendant stated that "Judge McAuliffe has already concluded . . . and the District Court already has adopted [the] holding" that "termination of employment based on 'just cause' requires interpretation of the [Collective Bargaining Agreement (CBA)]" and "Plaintiff has offered no new facts or law to warrant reconsideration of the prior ruling." (Doc. 38 at 11). Defendant's position is not well founded for several reasons. First, the adopted Findings and Recommendations discussed only Plaintiff's original seventh and eighth causes of action, which were both breach of contract claims. The assigned magistrate judge did not determine whether the remaining causes of action were preempted or "substantially dependent on the terms of the CBA." (Doc. 38 at 11.) In fact, the magistrate judge explicitly stated: "It is unnecessary to determine whether Plaintiff's remaining claims are preempted . . .

4

to the extent Plaintiff's remaining claims are not subject to preemption, supplemental jurisdiction over such claims would be appropriate." (Doc. 21 at 7.) Defendant also claims Plaintiff offered "no new facts or law to warrant reconsideration of the prior ruling." (Doc. 38 at 11.) Though there are "no new facts" included in the operative pleading, the causes of action that required Plaintiff's motion for remand to be denied have been dismissed. This new procedural situation justifies reconsideration under Rule 60(b)(6). Dismissal of the two causes of action that authorized federal question jurisdiction would appear to satisfy the "different facts or circumstances" that "did not exist or were not shown previously" requirement of Local Rule 230(j).

Defendant also argues that the motion for reconsideration should be denied because it is untimely, having been filed ten months after the Findings and Recommendations were adopted. (Doc. 38 at 9–10.) Defendant acknowledges, of course, that it stipulated to permit Plaintiff to file an amended complaint in December 2022 and the motion for reconsideration followed approximately two months later. The Court declines to address this issue in detail because, even if Rule 60(b)(6) reconsideration is not warranted under the circumstances, the potential elimination of all the federal causes of action from this case permits *sua sponte* examination by the Court of whether it should exercise supplemental jurisdiction over any remaining state law claims. *See Acri v. Varian Assocs., Inc*., 114 F.3d 999, 1000 (9th Cir.1997) (en banc) (suggesting that a district court may, but need not, *sua sponte* decide whether to continue exercising supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) after all federal law claims have been dismissed). The undersigned would have raised this issue at some point. The motion for reconsideration has forced the matter.

**B.     28 U.S.C. § 1447(c)**

Before addressing the merits of Plaintiff's motion, the Court must first clarify a misconception embedded therein. Plaintiff's motion for remand is premised on 28 U.S.C. §1447(c) which requires the Court to remand a removed action "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."

Following the Court's adoption of the assigned magistrate judge's Findings and Recommendations, the parties stipulated to allow Plaintiff to amend the original complaint, which resulted in the current pleading, which no longer asserts causes of action that created federal question

5

jurisdiction. (Doc. 36 at 5.)  As a result, Plaintiff asserts that § 1447(c) applies because absent federal question jurisdiction, the Court must remand the removed action to state court. (*Id*. at 2.)

The Ninth Circuit has consistently held that the removal statute "is strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *see also Taylor-El v. Cisneros*, 2023 WL 4994559, at *2 (E.D. Cal., 2023).  However, the Ninth Circuit has also "held that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court."  *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006).  Jurisdiction is determined on "the pleadings filed at the time of removal without reference to subsequent amendments.  *Id.*  "Any post-removal pleadings must be treated just as they would be in a case originally filed in federal court."  *Brockman v. Merabank*, 40 F.3d 1013, 1016 (9th Cir. 1994).  "[A] plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based."  *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373 (9th Cir. 1997).

Section 1447(c) states, "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  The Section explains that "if it is discovered at any time in the litigation that there is no federal jurisdiction, a removed case must be remanded to the state court rather than dismissed.  [It] does not mean that if a facially valid claim giving rise to federal jurisdiction is dismissed," then the Court loses jurisdiction.  *Id.*; *see also Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991).

The issue of whether removal was proper is no longer disputed.  In fact, the Findings and Recommendations noted that Plaintiff "tacitly acknowledges" that the original complaint filed on December 29, 2020, in Merced County Superior Court alleged two state law causes of action that are preempted under Section 301. (Doc. 21 at 7.)[1]  Absent any defect in removal, § 1447(c) is inapplicable, and Plaintiff's statutory basis for remand is misplaced.  Similarly, Plaintiff's argument that § 1447(c) warrants remand because the amended complaint dismissed the federal claims is an improper application

---

[1] Plaintiff also concedes that the Court "rightly denied Plaintiff's request to dismiss its 7th and 8th causes of action, explaining that plaintiff's motion was based on Fed. R. Civ. P. 41 was the improper mechanism for dismissing these claims [and] [t]he correct rule for such a change is Fed. R. Civ. P. 15 (a)." (Doc. 36 at 9.)

of § 1447(c) and misunderstanding of underlying removal principles. *See Gilmore v. Bank of New York*, 2009 WL 2031736, at *2 (S.D. Cal., 2009). Therefore, § 1447(c) and any post-removal amendments to the pleadings are not dispositive of the Court's jurisdictional analysis.

On the other hand, federal courts are also given supplemental jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a); *see Carnegie-Mellon U. v. Cohill*, 484 U.S. 343 (1988)[2]. Once supplemental jurisdiction exists, it remains subject to the discretionary provision for remand in § 1441. Therefore, when a plaintiff amends the original complaint to dismiss all federal claims, as seen here, the Court still may exercise supplemental jurisdiction over the case given the propriety of removal. *Williams*, 471 F.3d at 976; *Brockman v. Merabank*, 40 F.3d 1013, 1017 (9th Cir. 1994); *Ellis v. Gelson's Markets,* 1 F.3d 1246 (9th Cir. 1993) (holding a district court may exercise supplemental jurisdiction over claims that are brought in conjunction with claims that are preempted by the LMRA). The Court may decline to exercise supplemental jurisdiction and remand a case to state court if any of the following circumstances apply:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c)(1)-(4). As the analysis below indicates, no federal claims reman in this case. As a result, Plaintiff's motion for remand must be analyzed under § 1367(c)(3).

C.      **Federal Question Jurisdiction Generally**

The Court has federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Determination of federal question jurisdiction "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of plaintiff's properly pleaded complaint." *Caterpillar*

---

[2] In *Carnegie–Mellon*, the defendants had properly removed a case involving federal and state law claims, and the federal claims were subsequently dismissed. 484 U.S. 343 (1988). The issue before the Supreme Court was "whether the district court could, in the absence of statutory authority, remand the case to state court. *Id.* The Supreme Court concluded that "when a district court may relinquish jurisdiction over a removed case involving pendent claims, the court has discretion to remand the case to state court." *Id.* at 351; *Brockman v. Merabank*, 40 F.3d 1013, 1017 (9th Cir. 1994).

*Inc. v. Williams*, 482 U.S. 386, 392 (1987). Therefore, plaintiff's complaint must establish "either that (1) federal law creates the cause of action or that (2) plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement*, 524 F.3d 1090, 1100 (9th Cir. 2008). *See also Barefield v. HSBC Holdings PLC*, 2018 WL 3702307, at *4 (E.D. Cal. 2018). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). Once a case has been properly removed, the district court has jurisdiction over it on all grounds apparent from the complaint, not just those cited in the removal notice. *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 977 (9th Cir. 2006).

### D.     Section 301 Preemption

Plaintiff argues that the Court now lacks federal subject matter jurisdiction because the remaining causes of action are not preempted by § 301. (Doc. 36 at 11–16.) Plaintiff explains that the remaining causes of actions, FEHA violations and various "derivative claims,"[3] are not subject to § 301 preemption because the actions do not require interpretation of the CBA. In opposition, Defendant maintains that the Court has federal question jurisdiction because each of Plaintiff's remaining claims are "intertwined" and "substantively dependent on CBA analysis," therefore, completely preempted by § 301. (Doc. 38 at 11.) In reply, Plaintiff reiterates that dismissal of the "seventh cause of action for breach of oral contract not to terminate employment without good cause, and eighth cause of action for breach of implied in fact contract not to terminate employment without good cause" are facts that allow remand. (Doc. 40 at 2.) Plaintiff also further explains that the Court lacks subject matter jurisdiction because "[i]ndependent state law governs these causes of action and is sufficient to dispose of each claim." (*Id.* at 2.) Plaintiff asserts that "[a]t best, defendants may need to simply 'refer' to the CBA in mounting a defense" and even still that "is not sufficient for preemption." (*Id.*) The Court notes that

---

[3] The FEHA violations are discrimination, harassment, retaliation, failure to provide reasonable accommodation, and failure to engage ("FEHA Claims"). The "derivative claims" are negligent hiring, supervision, and retention, violation of California Labor Code § 1102.5, wrongful termination of employment in violation of public policy, and intentional infliction of emotional distress. (Doc. 31.)

Defendant does not address preemption as to four[4] of Plaintiff's alleged FEHA violations. (Doc. 38.)

Section 301 grants district courts federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization. . ." 29 U.S.C. § 185(a). Section 301 also completely preempts any state law claims based on alleged violations of contracts between employers and labor organizations. *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993). State law claims "that are completely preempted are removable to federal court under the complete preemption corollary to the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 392–93. "This doctrine allows state law claims to be removed to federal court, even where a federal question does not appear on the face of the complaint." *Id.* at 392. "[O]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.*; *see* 28 U.S.C. § 1331.

Although "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization," the Supreme Court has stressed that "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Caterpillar*, 482 U.S. at 394. Section 301 preempts only "claims founded directly on rights created by collective-bargaining agreements," and claims "substantially dependent on analysis of a collective-bargaining agreement." *Id.*

The Ninth Circuit has established a two-part test to determine whether a state law claim is preempted by § 301. *Columbia Export Terminal, LLC. v. Int'l Longshore and Warehouse Union*, 23 F.4th 836, 842 (9th Cir. 2022); *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053 (9th Cir. 2007). First, courts must inquire "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Burnside,* at 1059. "If the right exists solely as a result of the CBA, then the claim is preempted." *Id.*; *Columbia Export Terminal*, 23 F.4th at 842 (The first step asks: "Does the claim seek purely to vindicate a right or duty created by the CBA itself?"). If the answer is "yes," then the claim is preempted. But if not, courts must "proceed to the second step and ask whether [the state law] right is substantially dependent on analysis of a collective-bargaining agreement.'" *Id.*

---

[4] Defendant's briefing addresses two of Plaintiff's alleged FEHA claims: "disability discrimination and failure to provide reasonable accommodation." (Doc. 38 at 19.) Defendant's briefing seems to focus Plaintiff's eighth and ninth causes of action.

(quoting *Caterpillar*, 482 U.S. at 394). A state law right is "substantially dependent on the analysis of the CBA" if "the claim cannot be resolved" without interpreting the CBA versus "simply looking to the CBA." *Columbia Export Terminal*, 23 F.4th at 842. Claims that require the interpretation of a collective bargaining agreement are preempted. *See Dent v. Nat'l Football League* 903 F.3d 1109, 1116 (9th Cir. 2018); *McCray*, 902 F.3d at 1010. From this test, "state law causes of action are preempted if they are either based upon the collective bargaining agreement or dependent upon an interpretation of the agreement." *Ramirez,* 998 F.2d at 748; *see McCray,* 902 F.3d at 1010; *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001).

Under the second step, "interpretation" is construed narrowly. *Dent*, 902 F.3d at 1116. "If there is only a hypothetical connection to a collective bargaining agreement and a state law claim, or if a collective bargaining agreement will only be considered, referred to, or simply applied, then the collective bargaining agreement will not be 'interpreted.'" *Id.* (internal citations omitted)*; see also Lehr v. Sierra Ambulance Service*, 2018 WL 6445687, at *3 (E.D. Cal. 2018). "[T]he need to interpret the [collective bargaining agreement] must inhere in the nature of the plaintiff's claim." *Id.* (external citations omitted.) "[R]esolution of a plaintiff's claim must require interpretation of a provision of a collective bargaining agreement, it is not enough that a [CBA] is potentially relevant to the state law claims without any guarantee that interpretation or direct reliance will actually occur." *Dent* at 1116-17. Purely factual questions that pertain to the conduct of the employee and the conduct and motivation of the employer will not require an interpretation of a collective bargaining agreement. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988); *Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1408 (9th Cir. 1992); *see also Dent*, 903 F.3d at 1017. Similarly, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted [during] state-law litigation. . . does not require the claim to be extinguished." *Cramer*, 255 F.3d at 689.

    1.    *Plaintiff's FEHA Claims are not preempted by section 301 of the LMRA.*

The first five of Plaintiff's nine causes of action arise under FEHA. The Ninth Circuit has "a long line" of cases "holding that FEHA employment discrimination claims are not *ipso facto* preempted by § 301 of the LMRA." *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1203-04 (9th Cir. 2007) (cases

therein); *see also Brown v. Brotman Med. Ctr.*, 571 F. App'x 572, 574-75 (9th Cir. 2014).  The Ninth Circuit has also "consistently held that state law discrimination claims under the FEHA do not require courts to interpret the terms of a CBA and are therefore not preempted by § 301." *Schrader v. Noll Mfg. Co.*, 91 Fed. App'x. 553, 555 (9th Cir. 2004); *Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1517 (9th Cir. 1988) (finding no § 301 preemption of FEHA disability discrimination claim because the right not to be discriminated against because of physical handicap is "defined and enforced under state law without reference to the terms of any collective bargaining agreement"); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286-87 (9th Cir. 1989); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 240 (9th Cir. 1990); *Ramirez*, 998 F.2d at 748-49 ("In every case in which we have considered an action brought under the California Employment Act, we have held that it is not preempted by section 301.").  FEHA creates "nonnegotiable state law rights which cannot be altered by contract, including by CBAs." *Id.* (quoting *Ramirez*, 998 F.2d at 748); *see also Chmiel*, 873 F.2d at 1286 (holding FEHA rights are "defined and enforced under state law without reference to the terms of any collective bargaining agreement"); *Cook*, 911 F.2d at 240 ("[The employee's] state-law claim is consequently independent of the agreement.  That [he] might also have separate remedies under the bargaining agreement makes no difference."); *Humble v. Boeing Co.*, 305 F.3d 1004, 1009 (9th Cir. 2002) ("As the Supreme Court explained in *Lingle*, just because a CBA provides a remedy or duty related to a situation that is *also* directly regulated by non-negotiable state law does not mean the employee is limited to a claim based on the CBA.").

> a. *Plaintiff's discrimination, harassment[7], retaliation, failure to engage in interactive process, and failure to provide reasonable accommodation Claims (Doc. 31 at 18-23.)*

Plaintiff's FEHA claims do not require an interpretation of any CBA provision.  Instead, the FEHA analysis "will turn on whether [Plaintiff] was subjected to race discrimination, whether Defendant[] ignored his complaints and failed to prevent it, and whether [Plaintiff] was discriminated and retaliated against for reporting the discrimination and harassment." *Steib v. Sony Pictures*

---

[7] "Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's disability race, national origin, and/or ancestry, in violation of Government Code section 12940(j) [.]" (Doc. 31 at 18).

*Television Inc.*, 2023 WL 3292865, at *4 (C.D. Cal. 2023); *see Hendrix v. KTLA, LLC*, 2021 WL 3051979, at *4 (C.D. Cal. 2021) (finding FEHA claims not preempted where the analysis turned on whether the plaintiff was subjected to discrimination and retaliation and whether the defendants ignored his complaints).  Plaintiff alleged that Defendant discriminated against him based on his disability, sex, and/or race[8] when they terminated his employment, failed to accommodate him, and rejected him for open alternative positions. (Doc. 31.) These claims require a factual inquiry into Defendant's motives. "Purely factual questions that pertain to the conduct of the employee and the conduct and motivation of the employer will not require an interpretation of a collective bargaining agreement." *Lingle*, 486 U.S. at 407; *see Detabali*, 482 F.3d at 1203 (finding no Section 301 preemption in FEHA discriminatory termination claim "because there is no dispute over the meaning of any terms within the agreement"); *Robles v. Gillig LLC*, 771 F. Supp. 2d 1181, 1184 (N.D. Cal. 2011) ("The key to resolving Plaintiff's claims will be Defendant's motivation in terminating Plaintiff's employment, i.e. whether Defendant terminated him because of his disability. This purely factual determination does not require a court to interpret the 'just cause' provision of the CBA.").  There does not appear to be anything about Plaintiff's FEHA claims that would take them outside of this long line.  Therefore, Plaintiff's FEHA claims are not preempted under § 301.

Likewise, Plaintiff's Whistleblower Retaliation Claim[9] arising under California Labor Code section 1102.5 (Doc. 31 at 24-25) is not preempted. *See Ackerman v. W. Elec. Co., Inc.*, 860 F.2d 1514, 1517 (9th Cir. 1988); *see also Lingle,* 486 U.S. at 409-10 (finding a state law claim for "retaliatory discharge" was not preempted "even though the same set of facts led to arbitration under the collective bargaining agreement."). The critical fact in *Lingle* was that "the state law factual inquiry did not turn on the meaning of any provision of the collective bargaining agreement." *Little v. P. Gas and Electric Co.*,

---

[8] "Subjecting plaintiff to adverse employment actions, such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's disability (actual, history of, and/or perceived), race, national origin, color, and/or ancestry, in violation of Government Code section 12940(a) [.]" (Doc. 31 at 18.)

[9] "Plaintiff's seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including the right to be free of discrimination, harassment, and retaliation in violation of Government Code section 12940(h), were substantial motivating reasons for defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, and/or to take other adverse employment actions against plaintiff." (*Id.*, at 21-22.)

12

2022 WL 612668, at *3 (N.D. Cal. 2022). Such allegations require inquiry into Defendant's conduct and application of Defendant's procedures—not the CBA itself. *See Brown v. Brotman Medical Center Inc.*, 571 Fed. App'x. 572, 575 (9th Cir. 2014) ("The elements of [retaliation] claim require an inquiry into the respective actions of the employer and the employee . . . This inquiry will not depend on interpretation of terms in the CBA.").

Plaintiff must show (1) that he "opposed practices forbidden [under FEHA]; (2) retaliatory animus on the part of the employer; (3) an adverse action by the employer; (4) a causal link between the retaliatory animus and the adverse action; (5) damages; and (6) causation." *Washington v. Cal. City Correction Ctr.*, 871 F. Supp. 2d 1010, 1027 (E.D. Cal. 2012). None of these elements require interpretation of, let alone reference to, the CBA. *Shields v. Andeavor Logistics LP*, 2019 WL 3453202, at *3 (C.D. Cal. 2019). Instead, these factors require a specific factual inquiry that "pertains to the conduct of the employee and the conduct and motivation of the employer." *Lingle*, 486 U.S. at 407 (holding Illinois state tort of retaliatory discharge was not preempted by Section 301).

### b. *Plaintiff's Claims for Failure to Engage in the Interactive Process and Failure to Provide Reasonable Accommodations*[10]

In response to Plaintiff's FEHA Claims for failure to provide reasonable accommodations for his disability and failure to engage in the interactive process, Defendant argued that the CBA "covers all the conduct relating to [Plaintiff's] claim of disability discrimination and failure to provide reasonable accommodation." (Doc. 38 at 21.) Specifically, Defendant pointed to Section 9 of the CBA which "outlines the procedures for job transfers and applying for a different position," and "sets forth rules and procedures regarding job transfers for employees who are on 'modified duty.'" (*Id.*) Therefore, "whether any accommodations provided to Plaintiff were 'reasonable' requires interpretation of the CBA to see if new positions could be created without violating union rules; whether alternative positions or light duties could be provided without infringing on the seniority terms of the CBA; whether the CBA's dispute resolution procedures were properly invoked and exhausted if any accommodations were 'disputed." (*Id.* at 22.) Defendant cited *Peruguni v. Safeway Stores, Inc.*, 935 F.2d 1083, 1088 (9th Cir.

---

[10] "Plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements," Failing to take all reasonable steps to prevent discrimination and harassment based on race, national origin, and/or ancestry, in violation of Government Code section 12940(k) [.]" (Doc. 31 at 18.)

1991) in support. Specifically, Defendants provide the following quote from *Perugini:*

> To the extent that Perugini's claim is based on Safeway's refusal to provide light duty, her claim is precluded by section 301(a). We therefore must look to the CBA to judge the appropriateness of Safeway's behavior in regard to this allegation. No provision specifically addresses light duty, but several provision relate to the allegation in this case … We can determine whether Safeway was acting consistently with its duties under the CBA in refusing to reassign Perugini only by interpreting these provisions.

(*Id.* at 22.)

Defendant's *Perugini* citation and quote is misleading because the causes of action discussed were breach of the duty of fair representation and emotional distress. *Perugini*, 935 F.2d at 1086. Perugini did not allege any FEHA claims. Moreover, the Ninth Circuit's holding is not based on the rationale offered by Defendant. (Doc. 38 at 21-22.) The passage quoted by Defendant was taken from the Ninth Circuit's discussion of Perugini's emotional distress claim, which the Ninth Circuit explicitly explained:

> Perugini's emotional distress claim against Safeway is based in part on its refusal to honor her request for light work; however, Perugini also complains that Safeway harassed her at her job because she was female and pregnant. Perugini's complaint details a course of discriminatory conduct by Safeway unrelated to her request for light work. The allegations against Safeway include harassing and discriminatory remarks by Safeway employees, refusal to accept letters from her doctor, and assignment of extra, more difficult work. Specifically, upon learning of her pregnancy, Perugini's supervisor's remark about her pregnancy being "bad news," and the assistant manager's questions regarding when she was going to take disability leave, demonstrate conduct independent of any response to Perugini's request for light work. Thus, Perugini's emotional distress claim against Safeway must fairly be considered in two segments for purposes of preemption. We must address claims for: (1) emotional distress caused by Safeway's refusal to assign Perugini light work, and (2) emotional distress caused by Safeway's on-the-job harassment of Perugini.

*Id.* at 1088. The Ninth Circuit then distinguished that:

> to the extent that Perugini's claims are based on allegations that Safeway's conduct and remarks constituted on-the-job harassment, reference to the CBA is not required to determine whether Safeway's conduct exceeded all bounds usually tolerated in a civilized community. The CBA does not govern the offending behavior. The resolution of these claims depends on a purely factual inquiry into the conduct and motivation of the employer.

*Id.* The Ninth Circuit also found the argument that "Perugini's emotional distress claim . . . is preempted by section 301 because the court must refer to the CBA to determine whether the Union failed to represent Perugini adequately as she sought light duty" as "**persuasive only to the extent that**

14

**Perugini's claim is based on an allegation that the Union violated the CBA**." *Id.* at 1089 (emphasis added).  For these reasons, Defendant's *Perugini* citation is misleading and distinguishable from Plaintiff's claims.

Instead, the Court finds that Plaintiff's FEHA Claim for failure to provide reasonable accommodations for his disability not preemption by § 301 of the LMRA "because the range of options for accommodating her disabilities are not limited to those identified in the CBA." *Shields*, 2019 WL 3453202, at *2.  "FEHA regulations require an employer to consider 'any and all reasonable accommodations of which it is aware or that are brought to its attention by the applicant or employee, except ones that create an undue hardship.'" *Id.*; *see* 2 Cal. Code Regs. § 11068.  Therefore, "even if the Court must refer to the CBA to review *some* of the accommodations available to Plaintiff, the CBA remains only 'peripherally relevant' to Plaintiff's claims and mere reference to the CBA does not 'mandate preemption.'"  *Id.* (citing *Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002) (concluding that Plaintiff's reasonable accommodation claim is not preempted.); *see also Perez v. Proctor and Gamble Manufacturing Co.*, 161 F.Supp.2d 1110 (E.D. Cal. 2001).[11]

Regarding a "FEHA claim for failure to engage in the interactive process, the Court must also engage in a fact-specific inquiry into whether Defendants reasonably accommodated Plaintiff's disability.   [T]he Court must also perform a fact-specific inquiry into whether Defendants engaged in a good faith interactive process in determining the options available to Plaintiff." *Shields*, 2019 WL 3453202, at *3; *see* 2 Cal. Code Regs. § 11069 (c) (California regulation outlining the fact-specific interactive process obligations of an employer under FEHA).  Therefore, Plaintiff's failure to engage in the interactive process claim would only *potentially* require *reference to*, as opposed to interpretation of, the CBA.  *See Humble*, 305 F.3d at 1010.

---

[11] In *Perez v. Proctor and Gamble Manufacturing Co.*, 161 F.Supp.2d 1110 (E.D. Cal. 2001), the plaintiff claimed he was constructively discharged in violation of FEHA when his employer failed to accommodate his disability with an alternate position.  The employer argued the claim was preempted by the LMRA because the court would have to interpret the selection guidelines of the CBA to determine whether the plaintiff was eligible for other positions. *Id.* at 1118.  The district court rejected this argument because the "selection guidelines and the CBA are simply one of several factors for the court to consider in evaluating his claim." *Id.* at 1118-19.  Indeed, "[t]he *meaning* of the selection guidelines are not the subject of dispute. While the analysis of [the employer's] FEHA defense requires the court to *consider* the guidelines, it does not require the court to *interpret* them." *Id.* at 1119

    *c.*  *Plaintiff's Negligent Hiring, Supervision, and Retention Claim (Doc. 31 at 23-24)*

  "State law negligence claims are preempted if the duty relied on is 'created by a [CBA] and without existence independent of the agreement.'" *Ward v. Circus Circus Casinos, Inc.*, 473 F.3d 994, 999 (9th Cir. 2007) (quoting *United Steelworkers v. Rawson*, 495 U.S. 362, 369 (1990)). Plaintiff does not invoke or refer to any duty arising from the CBA. Rather, Plaintiff contends that Defendant failed to use reasonable care in investigating, supervising, hiring, and retaining his harassers. (Doc. 31 at 23-24.) These negligence claims arise from California common law, "are independent of the CBA[,] and are not preempted by the LMRA." *Hendrix*, 2021 WL 3051979, at *6 (citing *Ward*, 473 F.3d at 998–99).

    *d.*  *Plaintiff's Wrongful Termination of Employment in Violation of Public Policy Claim (Doc. 31 at 25-26)*

  Defendant argues that Plaintiff's wrongful termination in violation is preempted because it is "substantially dependent or inextricably intertwined with the consideration of the" CBA term "just cause." (Doc. 38 at 11.) Defendant explained that Plaintiff alleged that his termination was "because of his protected status' as opposed to 'just cause" but regardless the CBA must be interpreted because "if termination of employment is based on 'just cause' under the CBA, there can be no unlawful termination in violation of public policy." (*Id.*) Defendant did not provide relevant authority for this position.

  The Court disagrees.[12] Plaintiff's wrongful termination claim is not preempted because it furthers a state interest and is based on FEHA and Article I, Section 8 of the California Constitution, which is the state constitutional prohibition against discrimination. (Doc. 31); *see also Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1001 (9th Cir. 1987) ("[A wrongful termination in violation of public policy] claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship."); *Brown*, 571 Fed. App'x at 575 (finding a wrongful termination claim premised on FEHA discrimination "further[s] a state interest in preventing workplace discrimination" and "does not require interpretation

---

[12] Foremost, Defendant's argument seems to imply that termination of an employee based only on the employer's discriminatory animus constitute "just cause." Therefore, any termination arising from the employer's discriminatory animus toward an employee's "protected status" can be proper and not "unlawful" or a "violation of public policy." This argument is a blatant misunderstanding of the laws and principles surrounding wrongful discharge and § 301 preemption.

of the CBA as it focuses on [the employer's] motivations"). The Ninth Circuit agrees: "[t]here is little doubt that California has adopted a public policy against discrimination in the work place . . . [E]nforcement of the state discrimination statutes would not require interpretation of any of the provisions of the collective bargaining agreement." *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 643-44 (9th Cir. 1989).

Plaintiff's wrongful termination claim is premised on fundamental public polices such as race and disability discrimination and would further a state interest in preventing workplace discrimination. Plaintiff's claim also does not require interpretation of the CBA because it focuses on Defendant's motivations for terminating Plaintiff. Therefore, § 301 does not preempt Plaintiff's claim for wrongful termination in violation of public policy.

    *e.*  *Plaintiff's Intentional Infliction of Emotional Distress Claim (Doc. 31 at 26-27)*

In response to Plaintiff's infliction of emotional distress (IIED) claim, Defendant argued that "the reasonableness or outrageousness of an employer's conduct to terminate a union employee requires an interpretation of the CBA . . . because if the trier of fact finds that the termination was for 'just cause,' as permitted by the interpretation of the CBA, then the employer's decision cannot be 'extreme or outrageous' to support a claim under IIED." (Doc. 38 at 12.) Defendant also argued that "Plaintiff's IIED claim is premised on other alleged 'extreme and outrageous conduct [such as write-ups] that are substantially dependent on the terms of the CBA." (*Id.* at 13.) Defendant points to the "Dispute Resolution Procedure" of the CBA which covers "progressive disciplinary cases, such as those involving work performance or attendance/punctuality" and claims that "[i]f Plaintiff contends that the type of 'unfair' criticism of his work performance or attendance should be litigated in civil court, then it will be necessary to interpret the CBA to determine whether the allegations in the FAC are exempted from the progressive discipline, grievance, and arbitration procedures set forth by [CBA]." (*Id.* at 13-14.)

Defendant appears to have a misunderstanding of the Ninth Circuit's § 301 preemption test. Under the second prong of the preemption analysis, "interpretation" is construed narrowly. *Dent*, 903 F.3d at 1116. "[I]t means something more than 'consider,' 'refer to,' or 'apply." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921-22 (9th Cir. 2018). "[A] hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim . . ." *Cramer*, 255 F.3d at 691 (emphasis added).

17

1  "[R]esolution of a plaintiff's claim must require interpretation of a provision of a collective bargaining
2  agreement, it is not enough that a [CBA] is potentially relevant to the state law claims without any
3  guarantee that interpretation or direct reliance will actually occur." *Dent*, at 1116-17.  "Purely factual
4  questions that pertain to the conduct of the employee and the conduct and motivation of the employer
5  will not require an interpretation of a collective bargaining agreement." *Dent*, 903 F.3d at 1017 (citing
6  *Lingle*, 486 U.S. at 407; *Milne Emps. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1408 (9th Cir. 1992)).
7  Moreover, the Ninth Circuit and the Supreme Court have cautioned Courts to remain mindful that the
8  "LMRA § 301 forum preemption inquiry is not an inquiry into the merits of a claim; it is an inquiry into
9  the claim's 'legal character'—whatever its merits—so as to ensure it is decided in the proper forum."
10 *Schurke*, 898 F.3d at 924 (quoting *Livadas*, 512 U.S. at 123-24).  Therefore, the Court's "only job is to
11 decide whether, as pleaded, the claim in this case is 'independent' of the CBA in the sense of
12 'independent' that matters for preemption purposes: resolution of the state-law claim does not require
13 construing the collective-bargaining agreement.'" *Id.* (quoting *Lingle*, 486 U.S. at 407).

14 Defendant fails to meaningfully connect the identified CBA provisions to Plaintiff's IIED
15 allegations.  *See Cramer*, 255 F.3d at 691–92 ("A creative linkage between the subject matter of the
16 claim and the ... CBA provisions is insufficient [to preempt the claim].").  The provisions that Defendant
17 identified does not permit the outrageous conduct at issue here, discrimination, harassment, and
18 retaliation based on race.  Also, the same arguments that Defendant made in its Opposition (Doc. 38)
19 were rejected in the very cases that Defendant cited.

20 For example, Defendant cited *Busey v. P.W. Supermarkets, Inc.,* 368 F. Supp. 2d 1045 (N.D. Cal.
21 2005), in its IIED argument and quoted "Ninth Circuit case law provides that the LMRA preempts an
22 intentional infliction of emotional distress claim when the CBA governs the offending behavior." (Doc.
23 38 at 13.)  Defendant's reliance and citation is somewhat misleading.

24 In *Busey*, the Court distinguished the plaintiff's IIED claims from previous Ninth Circuit cases
25 that held the plaintiffs' IIED preempted.  368 F. Supp. 2d at 1052-53.  For example, in *Cook v. Lindsay*
26 *Olive Growers*, 911 F.2d 233, 239-40 (9th Cir. 1990), plaintiff's IIED claim was based on "wrongful
27 discharge which was directly based on the CBA terms regulating seniority and work transfers."  In
28 *Harris v. Alumax Mill Products, Inc.*, 897 F.2d 400, 400-02 (9th Cir. 1990), and *Hyles v. Mensing*, 849

1   F.2d 1213, 1216 (9th Cir. 1988), the IIED claims were based on defendant's alleged "failure to follow
2   the terms of the CBA" and "misapplication of its provisions as it relates to how an employee should be
3   discharged." *Id.* at 1052. The Court explained that the CBA "merely states, '[g]rievances on the
4   discharge or suspension of an employee shall be submitted in writing to the Employer within then (10)
5   working days of the receipt of notice by the Union' [and a] straightforward reading of these terms yields
6   just one interpretation, that is, interpretation of the CBA is required when an employee wishes to
7   challenge the *fact* that he was discharged, rather than the *manner* in which he was discharged.'" *Id.* at
8   1053. The plaintiff's basis for IIED claims included conduct not covered by provisions of the CBA;
9   therefore, "unrelated to any interpretation of the CBA." *Id.*

10  Defendant also cited *Garcia v. Rite Aid Corporation*, 2017 WL 1737718 (C.D. Cal. 2017), but
11  again, misconstrued the Court's holding. In *Garcia*, "plaintiff's claims were not only based on his
12  FEHA discrimination, retaliation, and harassment claims but also based on plaintiff's wrongful
13  termination claim that alleged defendants acted outrageously by termination him because he exercised
14  his right to self-defense and his right to testify at trial." *Garcia*, 2017 WL 1737718, at *7. The Court
15  explained that since plaintiff's IIED claim was based on his allegedly wrongful termination, his IIED
16  claim "partially require[d] CBA interpretation" thereby making the claim partially preempted. *Id.* The
17  Court's analysis did not conclude with partial preemption but continued and clarified that "to the extent
18  Plaintiff alleges that his wrongful termination was based on discriminatory or retaliatory animus it is not
19  preempted. Therefore, whether Defendants acted outrageously (and therefore caused Plaintiff emotional
20  distress) by wrongfully terminating him due to this animus does not require CBA interpretation and this
21  portion of Plaintiff's emotional distress claim arising from his alleged wrongful termination is not
22  preempted." *Id.*

23  In this case, Plaintiff based its IIED claim on Defendant's alleged "discriminatory, harassing, and
24  retaliatory actions" and claimed such conduct constituted "extreme and outrageous misconduct." (Doc.
25  31 at 26.) The Court finds that the CBA does not cover the alleged extreme and outrageous conduct at
26  issue here. Therefore, Plaintiff's IIED claim is not preempted.

27  **E.     Supplemental Jurisdiction**
28  Because the Court has determined that there are no federal claims remaining in this case, the

question then becomes whether the Court should exercise supplemental jurisdiction under § 1367(c)(3) ("The Court may decline to exercise supplemental jurisdiction and remand a case to state court if . . . the district court has dismissed all claims over which it has original jurisdiction."). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (*citing San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998)) (holding that a district court is not required to provide an explanation when declining jurisdiction under § 1367(c)). Notwithstanding the fact that this case has been pending before this Court since February 2021, the Court has not engaged substantively in the remaining claims. Thus, these considerations favor remand.

## CONCLUSION

Defendant has failed to show that any provision of the CBA will need to be "interpreted" based on the nature of Plaintiff's claims. Accordingly, the Court **ORDERS**:

1. Plaintiff's motion to remand (Doc. 36) is GRANTED.
2. Pursuant to 28 U.S.C. § 1367(c), the Court declines supplemental jurisdiction, and this case is REMANDED forthwith to the Madera County Superior Court.

IT IS SO ORDERED.

Dated: __December 12, 2023__                                                                 /s/ Jennifer L. Thurston
                                                                                                                 UNITED STATES DISTRICT JUDGE